UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


RREF BB ACQUISITIONS, LLC                                              PLAINTIFF


v.                                                            NO. 3:12-CV-563-CRS


OAKBROOKE PROPERTIES, LLC et al.                               DEFENDANTS


## MEMORANDUM OPINION


This matter is before the court for consideration of the motions of the plaintiff, RREF BB

Acquisitions, LLC ("RREF"), for leave to file a first amended complaint (DN 58), and the

defendants, Oakbrooke Properties, LLC ("Oakbrooke"), Builders–Designers of Kentucky, Inc.

("Builders–Designers"), KLS Management, LLC ("KLS"), Kenneth E. Stout, and David Stout

(collectively, "Defendants") for leave to file an amended answer and counterclaim (DN 35).

Also before the court are RREF's motions for partial summary judgment (DN 29) and summary

judgment on Defendants' counterclaims (DN 43), as well as Defendants' motion for partial

summary judgment[1] (DN 44). Having been fully briefed, the motions are now ripe for

adjudication.

## I.  BACKGROUND

This action to foreclose on commercial mortgages and for other relief is before the court

on the basis of our diversity jurisdiction.[2]  The claims in this action derive from several loans

---

[1]  Defendants have jointly filed the motions for leave to file an amended answer and counterclaim (DN 35) and for partial summary judgment (DN 44).
[2]  RREF's sole member is Rialto Real Estate Fund, LP.  The general partner of Rialto Real Estate Fund, LP, is Rialto Partners GP, LLC, whose members are Rialto Capital Management, LLC and Lennar Distressed Investments, LLC. Lennar Corporation is the sole member of Rialto Capital Management, LLC and Lennar Distressed Investments, LLC.  Each of these entities is a citizen of Delaware and Florida.  Defendants are all citizens of Kentucky.

made to Defendants by Branch Banking and Trust Company ("BB & T"), which RREF—as BB & T's successor-in-interest—claims are in default. The loans were made on behalf of Defendants Oakbrooke and Builders–Designers. Individual defendants Kenneth E. Stout and David Stout are brothers and the sole members of Builders–Designers, a Kentucky corporation. Kenneth E. Stout is the managing member of Oakbrooke, a Kentucky limited liability company in the business of acquiring real estate for development. Oakbrooke frequently sold lots to homeowners and builders, including Builders–Designers. KLS is a Kentucky limited liability company whose sole member is Kerrick L. Stout, the son of Kenneth E. Stout.

Beginning in 2004, Oakbrooke entered into a series of loan transactions with BB & T. Several loans are at issue in this action, each of which is evidenced by a promissory note and subsequent note modifications and renewals (the "Oakbrooke Notes"). Also at issue is a promissory note that Builders–Designers executed in favor of BB & T (the "Builders–Designers Note"). The Oakbrooke and Builders–Designers Notes were secured by mortgages on several lots in undeveloped subdivisions located in Bullitt County, Kentucky (the "Mortgages"). Kenneth E. and David Stout individually and jointly signed several guaranty agreements to induce BB & T to make the loans (the "Guarantees").

On February 23, 2011, BB & T sent letters to Defendants demanding payment of all amounts due and owing under the Oakbrooke and Builders–Designers Notes. After Defendants failed to pay the amounts due and owing, BB & T declared the Oakbrooke and Builders–Designers Notes in default. It assigned the Notes, the Mortgages, the Guarantees, and other loan documents to RREF in December 2011.

RREF filed its complaint in this action on September 6, 2012, asserting the following causes of action against Defendants: (1) breach of contract by Oakbrooke (Count I); (2) breach

of contract by Builders–Designers (Count II); (3) foreclosure of the Mortgages (Count III); (4) breach of contract by Kenneth E. Stout (Count IV); (5) breach of contract by David Stout (Count V); and (6) appointment of a receiver.[3]  RREF contends that Defendants have not made the payments due on the Oakbrooke and Builders–Designers Notes, and that Defendants have violated other provisions of the Oakbrooke and Builders–Designers Notes, the Mortgages, the Guarantees, and the loan agreements.  RREF argues that the Oakbrooke and Builders–Designers Notes and the Mortgages each provide that in the event of default, RREF is entitled to payment of all amounts outstanding, in addition to accrued interest and attorney's fees and costs.  In addition, RREF claims that it is entitled to enforce the Mortgages and force a judicial sale of the properties and the related collateral.

Defendants filed an answer to RREF's complaint and asserted several counterclaims against RREF, including: (1) an accounting for all amounts claimed in the complaint; (2) a release of the mortgages against all properties which have been fully paid; and (3) any amounts to which Defendants may be entitled under KRS § 382.365.

On February 21, 2013, United States Magistrate Judge Dave Whalin conducted a Rule 16 scheduling conference in which deadlines were established for discovery and dispositive motions.  (DN 20).  These deadlines were subsequently extended to July 20, 2013 and October 18, 2013, respectively, by an order of this court entered on May 22, 2013.  (DN 26).  Neither the Rule 16 nor the May 22, 2013 orders established a deadline for the amendment of pleadings. However, on September 20, 2013, after the discovery deadline had passed, Defendants moved to amend their answer and counterclaim to include the additional defenses of failure to mitigate

---

[3]  RREF's claim for appointment of a receiver is also denominated "Count V."  Because it is incorrectly numbered, the court refers to this count by name.

damages and breach of contract, in addition to a counterclaim for breach of contract.  (DN 35).

On November 22, 2013, RREF moved to amend the complaint to add claims for the alternative

legal theories of equitable mortgage and reformation.  (DN 58).  The parties have also filed cross

motions for partial summary judgment.  (DNs 29, 43, 44).

## II.  STANDARD

A court must first consider a motion to amend before dismissing a complaint.  *Rice v.*

*Karsch*, 154 F. App'x 454, 465 (6th Cir. 2005) (citing *Ellison v. Ford Motor Co.*, 847 F.2d 297,

300 (6th Cir. 1988)).  Therefore, the court will address the motions for leave to amend before

addressing the motions for summary judgment.

Pursuant to Federal Rule of Civil Procedure 15(a), a party who fails to amend a pleading

within 21 days after service of a responsive pleading may only amend by seeking leave of the

court or by written consent of the adverse party.  Fed. R. Civ. P. 15(a)(2).  Rule 15(a)(2) provides

that leave to amend pleadings should be "freely give[n] . . . when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  Yet "the calculus changes once a pleading deadline set in a Rule 16 scheduling

order has passed."  *Iacono v. Sallie Mae, Inc.*, 2012 WL 2522426, *1 (W.D. Ky. June 28, 2012)

(citing *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003); *Shane v. Bunzl Distrib. USA, Inc.*,

275 F. App'x 535, 536 (6th Cir. 2008)).  In that case, Rule 16(b)(4) provides that a "schedule

may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).

"The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in

attempting to meet the case management order's requirements."  *Inge v. Rock Fin. Corp.*, 281

F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir.

2001)).  However, the Sixth Circuit has held that a district court must consider the "potential

prejudice to the nonmovant" when deciding whether to amend a scheduling order. *Leary*, 349 F.3d at 909; *Inge*, 281 F.3d at 625.

Rule 16 does not supplant Rule 15 and, therefore, a district court must determine whether leave to amend should be granted under that Rule. *See Leary*, 349 F.3d at 906–09. Generally, a motion for leave to amend the complaint should be granted under Rule 15 absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, "[d]elay by itself is not sufficient reason to deny a motion to amend." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001) (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)).

### III. DISCUSSION

#### A. Defendants' Motion for Leave to Amend the Answer and Counterclaims

The court will first address Defendants' motion for leave to amend their answer and counterclaims, which Defendants filed with the court on September 20, 2013. (DN 35). In their motion, Defendants seek to add the defenses of failure to mitigate damages and breach of contract, as well as an additional counterclaim for breach of contract based on RREF's alleged failure to execute partial releases of certain mortgages. The motion was filed before the October 18, 2013 dispositive motion deadline but subsequent to both the discovery deadline of July 20, 2013 and the filing of RREF's motion for partial summary judgment. RREF argues that the court should deny Defendants' motion because it is untimely, the proposed amendments would be unduly prejudicial to RREF, and the proposed amendments are futile because they would not survive a motion for summary judgment.

We first address RREF's arguments regarding the timeliness of Defendants' motion and the potential prejudice to RREF. Defendants' motion was filed before RREF's own motion to amend the complaint. Nonetheless, RREF contends that Defendants' proposed amendments were made unreasonably late in the litigation. RREF seems to be speaking out of both sides of its mouth. To the extent Defendants' motion is untimely, so must RREF's motion also be considered untimely. Therefore, any potential prejudice to RREF caused by the lateness of the amendment is mitigated by RREF's own delay in seeking leave to amend.

We next address RREF's arguments regarding the futility of the proposed amendments. Futility is found where an amendment could not overcome a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). To survive a Rule 12(b)(6) motion to dismiss, "the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level,' and 'state a claim to relief that is plausible on its face.'" *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal citation omitted) (alteration in original).

RREF first argues that the proposed defense of failure to mitigate damages is futile and not plausible on its face because RREF was not obligated to mitigate its damages under the terms of the Oakbrooke and Builders–Designers Notes. Defendants, on the other hand, argue that they presented RREF with several opportunities to recover partial payments on the Notes when they arranged for the sale of certain mortgaged properties. They allege that RREF either refused or failed to timely approve the sales, which prevented Defendants from reducing the amount of damages they were liable to pay. Although RREF contends that it was under no duty to approve

what it refers to as "vague proposals" from Defendants, Defendants argue that questions of fact remain as to whether RREF had a duty to mitigate.

Under Kentucky law, non-breaching parties have a duty to mitigate damages, but the breaching party's "recovery is diminished only to the extent that the plaintiff fails to mitigate the damages as they would be mitigated by an ordinary, reasonable person under similar circumstances." *Alliant Tax Credit Fund 31–A, Ltd. v. Murphy*, 494 F. App'x 561, 573 (6th Cir. 2012) (unpublished) (citing *Morgan v. Scott*, 291 S.W.3d 622, 641 n.49 (Ky. 2009)). RREF argues that Kentucky law does not impose a duty to mitigate when the parties have "contract[ed] to pay absolutely a certain sum of money." *Superior Woolen Co. Tailors v. M. Samuels & Co.*, 293 S.W. 1078, 1079 (Ky. 1927); *see also Davis v. Citibank N.A.*, 2010 WL 1404446 (Ky. Ct. App. Apr. 9, 2010). In this respect, RREF contends that the law should not impose a duty to mitigate on RREF, as BB & T's successor in interest, because Defendants contracted to pay a certain sum of money under the terms of the Oakbrooke and Builders–Designers Notes.

Defendants seek to distinguish *Superior Woolen* by arguing that it only applies in the context of a breach of a real estate lease. We agree that this distinction is determinative. In *Superior Woolen*, the Kentucky Supreme Court refused to impose a duty on the lessor to mitigate its damages after the lessee abandoned the leased premises and refused to pay the rent for the remainder of the lease term. 293 S.W. at 1079. The court reasoned that a lessor should not be obligated to mitigate in these circumstances by either affirmatively seeking a new tenant or accepting an unknown tenant proffered by the lessee. *Id.* This is a sound principle, but *Superior Woolen* is factually inapposite to the situation before this court. Here, Defendants did not ask RREF to minimize its damages by seeking out a purchaser for the lots, nor did they force RREF to accept an additional guarantor on the Notes. Rather, Defendants asked RREF to accept

-7-

payment in return for a release of certain encumbered lots.  This request does not seem extreme in light of the fact that the parties knew that Defendants were developing the mortgaged lots for sale to the public.  Therefore, it was within the contemplation of the parties, either by their prior course of dealing or through the language of their agreements, that the lots would be sold piecemeal rather than all at once.  Thus, we find that the rule of *Superior Woolen* does not apply under these facts and the proposed amendment is not futile.

RREF next argues that Defendants' proposed affirmative defense and counterclaim for breach of contract are futile because there is no evidence of any breach of contract or subsequent damage to Defendants.  Defendants, however, maintain that questions of fact remain as to whether RREF materially breached the terms of the loan agreements.

Under Kentucky law, a claim for breach of contract requires proof of the following elements: (1) the existence of a contract; (2) breach of that contract; and (3) damages stemming from the breach.  *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. 2009) (citation omitted).  Defendants allege in the proposed amendments that RREF breached the provisions of the loan agreements and violated KRS § 382.365[4] when it failed to execute partial releases of certain mortgages on properties for which principal reduction payments had been fully made.  RREF, however, argues that the proposed defense and counterclaim in effect seek a rescission of the loan agreements, and that these amendments are not plausible on their face because RREF was not obligated to release any of the land encumbered by the Mortgages.  Yet several of the loan documents provide for partial releases of the Mortgages.  Section 11.19 of the

---

[4]  This statute provides that a holder of a lien on real property must release the lien within thirty days from the date of the lien's satisfaction and, if the lienholder fails to release the satisfied lien, he or she can be held liable for per diem damages to a party with an interest in the property.  KRS § 382.365.  For the purposes of this statute, "date of satisfaction" means the day a lienholder receives a sum of money "that is sufficient to pay the principal, interest, and other costs owing on the obligation that is secured by the lien on the property."  *Id.* § 382.365(7).

November 2005 Loan Agreement, which is titled "Principal Reduction and Partial Release of Collateral," states that the "Bank will execute partial releases of its Mortgage upon receipt of $30,000 per lot sold in Woodlake Section V, and $20,000 per lot sold in Stone Meadow, Section II." (DN 1-16, p. 7). Section CC.06(n) to Schedule CC of the August 2008 Loan Agreement also states that the "Bank hereby agrees to release one or more lots, parcels or units of the Mortgaged Property or such other collateral which Borrower has pledged to secure advances under the Note ("Lot") under the following terms and conditions: Principal payment of $21,000[5] per lot for which a release is being requested." (DN 53-6, p. 9). The June 2004 Mortgage contains a "Lot Release Provision" which states that

> Provided this mortgage and the Note are not in default, individual lots of the Property (each a "Lot") will be released upon delivery to the Mortgagee of all of the following: the Mortgagor's Loan principal reduction payment in the amount of $18,000.00 per Lot; payment in the form of a check payable to the order of the County Court Clerk in the amount of $9.00; plus a copy of the deed conveying such Lot.

(DN 1-2, p. 3).

Thus, several of the loan documents envision and provide for the possibility of a partial release of the Mortgages upon the fulfillment of certain conditions, including the remittance of principal reduction payments. Whether RREF's purported duty to release was, in fact, triggered in this action is a question of fact that need not be addressed at this stage. For the purposes of this motion to amend, we find that Defendants' proposed amendments are not futile. Therefore, we will grant the motion to amend (DN 35).

---

[5] In Defendants' reply brief, they state that the 2008 Loan Agreement required a principal payment of $26,000 per lot as a condition of release of the mortgage for that lot. (DN 53, p. 13). However, from the court's reading of the 2008 Loan Agreement, a principal payment of $21,000 is required to invoke the collateral release provision.

## B. RREF's Motion for Leave to Amend the Complaint

With its proposed amendment, RREF seeks to add two alternative claims, both of which it maintains are asserted in response to arguments that Defendants have made regarding the validity of the November 2005 Mortgage. RREF argues that it should be permitted to add these defenses because it did not anticipate that Defendants would contest the validity of this mortgage. Defendants ask the court to refuse to exercise its discretion to grant the amendment on the grounds that it is untimely and unduly prejudicial.

Rule 16 contains a provision restricting the timing of amendments and provides, in relevant part, that a district judge must, after receiving the report from the parties under Rule 26(f), issue a scheduling order that "limit[s] the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b). The Rule is designed to ensure that, at some point, both the parties and the pleadings will be fixed. While delay alone ordinarily does not justify denial of leave to amend, "[a]t some point, however, 'delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Adams v. Gould*, 739 F.2d 858, 863 (3d Cir. 1984)). Moreover, "[w]hen amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001) (citing *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)).

In this instance, RREF sought leave to amend the complaint more than one month after the expiration of the dispositive motion deadline established in the Rule 16 scheduling order. Though the Rule 16 order did not specifically instruct that joinder of new parties or amendment of the pleadings should occur only by court order, the natural interpretation of the scheduling

order is that motions to amend the pleadings should have been submitted prior to this time. However, in this instance, we find that good cause exists to allow RREF's proposed amendments at this late stage in the proceedings. As we noted above, Defendants also seek amendment of their pleadings, which militates against a finding of prejudice. *See Leary*, 349 F.3d at 909 (noting that "in addition to Rule 16's explicit 'good cause' requirement, we hold that a determination of the potential prejudice to the nonmovant also is required when a district court decides whether or not to amend a scheduling order."). Therefore, we will grant by separate order RREF's motion to amend the complaint (DN 58).

### C. Motions for Partial Summary Judgment

The parties have filed cross motions for partial summary judgment (DNs 29, 43, 44). Although the discovery and dispositive motion deadlines in this action have passed, both parties requested time to complete additional discovery and file dispositive motions in the event the motions to amend were granted. Because we will grant the parties' motions to amend, we will remand the pending motions for partial summary judgment with leave to refile upon completion of additional discovery.

## IV. CONCLUSION

For the reasons set forth herein, the court will grant RREF's motion for leave to file a first amended complaint (DN 58) and grant Defendants' motion for leave to file an amended answer and counterclaim (DN 35). We will remand the pending motions for partial summary judgment (DNs 29, 43, 44) for leave to refile upon completion of additional discovery. A separate order will be entered this date in accordance with this Memorandum Opinion.

May 13, 2014

-11-

**Charles R. Simpson III, Senior Judge**
**United States District Court**